TEXARKANA SCHOOL DISTRICT *v.*
Ronnie R. CONNER

07-1068                                    284 S.W.3d 57

Supreme Court of Arkansas
Opinion delivered May 8, 2008

*Friday, Eldredge & Clark, LLP*, by: *Betty J. Demory*, for appellant.

*Harrelson, Moore & Giles, LLP*, by: *Greg Giles*, for appellee.

DONALD L. CORBIN, Justice. The present appeal is before us on a petition for review from a 4-2 decision of the Arkansas Court of Appeals reversing a decision by the Arkansas Workers' Compensation Commission that Appellee Ronnie R. Conner suffered a compensable injury while employed by Appellant Texarkana School District. On appeal, the primary issue to be determined is whether there was substantial evidence to support the Commission's determination that Conner was performing employment services at the time of his injury. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e). We affirm the Commission and, thus, reverse the decision of the court of appeals.

The record reflects that at the time of his accident Conner had been employed as a janitor for the District for over twenty-six years. As part of his employment duties, Conner carried a walkie-talkie and keys to all the locks on the school premises, but he was primarily responsible for emptying trash cans, cleaning floors and bathrooms, and cafeteria cleanup. While Conner was not required

to remain on campus for his one-hour lunch break, if he did remain on campus, he was on call and was required to provide assistance if needed.

On September 21, 2004, Conner left the school premises during his lunch break to perform a personal errand. Upon his return, Conner went to park in his usual parking lot but discovered a disabled truck blocking the main entrance to the lot. Conner then went to the back entrance of the lot that is secured by a locked gate. While attempting to unlock the gate, Conner was struck by the gate and pinned under it. As a result, Conner's leg was broken in two places. His injury left him unable to work for seven months.

Conner sought both temporary and permanent disability benefits from the District. The District asserted Conner was not entitled to benefits because he was not performing employment services at the time of his injury. A hearing before an Administrative Law Judge was held on May 24, 2005, to determine whether Conner had sustained a compensable injury. At that hearing, Conner testified about his job duties and that his supervisor issued him a set of keys that unlocked the building's doors, as well as the gates to the parking lot. Conner also testified that he normally eats lunch in the school cafeteria, where he can eat for free, but that if cleanup is needed, he is required to stop his lunch break and immediately tend to the cleanup. Conner admitted that he is not required to remain on the school premises, nor is he paid for his one-hour lunch break. Finally, Conner admitted that it was not part of his specific job duties to open the parking-lot gates and that he had never opened them on any prior occasion.

Following the hearing, the ALJ entered an order dated August 18, 2005, finding that Conner had not sustained a compensable injury, as he was not performing employment services at the time of his injury. The ALJ relied on Conner's testimony that he was returning to work after performing a personal errand, and in all of his years of employment he had never before been responsible for opening the gates at the back of the parking lot.

Conner appealed the ALJ's decision to the full Commission, and the Commission reversed, finding that Conner had been injured while performing employment services. Specifically, the Commission found that Conner had proven that his injury occurred while he was advancing his employer's interest, and stated:

> Admittedly, prior to his injury, the claimant had been on a personal errand. However, when his injury happened he had returned to

the respondent's property and was attempting to open a gate to obtain access to the respondent's parking lot. We believe the claimant was returning to work at this point and was providing a benefit to his employer in doing so.

We reach that conclusion because the claimant was on-call, and subject to being required to perform services for the respondent any time he was on their property. The claimant testified that he was carrying a walkie talkie which kept him in communication with his superior. He also testified that even on his lunch break, if there was something which arose that needed his attention, he was required to end his break and carry out his job duties.

In addition, the Commission found it significant that Conner was using the locked gate because the normal entrance to the parking lot was blocked by a disabled truck. This fact, according to the Commission, supported a conclusion that Conner was performing a service to the District by allowing access to the parking lot. In so concluding, the Commission relied on the court of appeals' decision in *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999) (holding that an employee who was injured while on a personal break was performing employment services at the time of her injury because she was required to end her break and assist students if needed).

The District appealed the Commission's decision to the court of appeals, which reversed the Commission's order, concluding that Conner was not providing employment services at the time of his injury. *Texarkana Sch. Dist. v. Conner*, 100 Ark. App. 100, 264 S.W.3d 579 (2007). Conner sought and was granted review in this court. Upon a petition for review, we consider a case as though it has been originally filed in this court. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

In appeals involving claims for workers' compensation, this court views the evidence in a light most favorable to the Commission's decision and affirms that decision if it is supported by substantial evidence. *Id.*; *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Cedar Chem.*, 372 Ark. 233, 273 S.W.3d 473. The issue is not whether the appellate court might have reached a different result from the Commission, but rather whether reasonable minds could reach the result found by the Commission. *Wallace*, 365 Ark. 68, 225 S.W.3d 361. If so, the appellate court must affirm the Commission's decision. *Id.*

The sole issue presented to us on appeal is whether Conner was performing employment services at the time of his injury. The District argues that the Commission's decision that Conner was performing employment services at the time of his injury was not supported by substantial evidence. Specifically, the District avers that Conner was returning from a personal errand, was not required to remain on the school's premises, could have parked in a different lot, and that it was not part of his job duties to unlock the gates. Conner counters that the decision of the Commission was supported by substantial evidence that he was performing an employment service at the time of his injury.

This court has repeatedly pointed out that Act 796 of 1993 significantly changed the workers' compensation statutes and the way workers' compensation claims are to be resolved. *See Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002) (citing *White v. Ga.-Pac. Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999)). Now, pursuant to Act 796, we are required to strictly construe the workers' compensation statutes. *See* Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2002).

Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2003). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2003). Act 796 fails, however, to define the phrase "in the course of employment" or the term "employment services." *Wallace*, 365 Ark. 68, 225 S.W.3d 361; *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). Thus, it falls to this court to define these terms in a manner that neither broadens nor narrows the scope of Act 796. *Pifer*, 347 Ark. 851, 69 S.W.3d 1.

This court has held several times that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer." *Wallace*, 365 Ark. at 72, 225 S.W.3d at 365 (quoting *Pifer*, 347 Ark. at 857, 69 S.W.3d at 3-4); *see also Collins v. Excel Specialty Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002); *White*, 339 Ark. 474, 6 S.W.3d 98. We use the same test to determine whether an employee was performing employment services as we do when determining whether an employee was acting within the course of employment. *Wallace*, 365 Ark. 68, 225 S.W.3d 361. Specifically, we have held that the test is whether the injury occurred "within

the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* (quoting *White*, 339 Ark. at 478, 6 S.W.3d at 100). The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Id.* Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Id.*; *see also Moncus v. Billingsley Logging & Am. Ins. Co.*, 366 Ark. 383, 235 S.W.3d 877 (2006).

■ It is clear that in a case such as the present one, where an injury occurs outside the time and space boundaries of the employment, the critical inquiry is whether the employer's interests were being advanced, either directly or indirectly. Thus, the pertinent question in the present case is whether the District's interests were advanced by Conner at the time he unlocked the gates and injured himself. The Commission determined that the District's interests were advanced by this action, and we cannot say that there was a lack of substantial evidence to support this conclusion. Specifically, Conner testified that he was attempting to return to work but was only able to access his normal parking area by unlocking the gates at the back entrance. Conner stated that at the time of his injury he was headed to the cafeteria where he typically ate lunch, and any time he would eat in the cafeteria he considered himself to be on call because he was required to attend to his job duties immediately, even if they arose during his lunch break.

■ It is axiomatic that questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem.*, 372 Ark. 233, 273 S.W.3d 473. As such, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.*; *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005). Here, there was no testimony presented to contradict that of Conner's that he was on call once he returned to the District's premises, and the Commission found him to be a credible witness. Moreover, the evidence demonstrated that the main entrance to this particular lot was blocked. In attempting to unlock the gate and provide access to the back entrance, Conner was advancing his employer's interests by allow-

ing other employees to enter or exit this parking lot, even if he was the only employee attempting to access the lot at the exact time of his accident. Accordingly, we must affirm the Commission's decision as reasonable minds could have reached the same conclusion as that of the Commission.

Commission affirmed; court of appeals reversed.