2010 Ark. App. 307

**Danielle N. WOOD, Appellant**

v.

**WENDY'S OLD FASHIONED HAM-BURGERS and Wausau Business Insurance Company, Appellees.**

**No. CA 09–1107.**

Court of Appeals of Arkansas.

April 14, 2010.

Jesse Thurman Skinner, Jr., Murphy, Thompson, Arnold, Skinner & Castleberry, Batesville, AR, Michael Edward Ryburn, Little Rock, AR, for appellant.

LARRY D. VAUGHT, Chief Judge.

Danielle Wood appeals the decision of the Arkansas Workers' Compensation Commission finding that she failed to prove that she sustained a compensable injury to her left knee when she slipped and fell at work. She contends that there is a lack of substantial evidence supporting the Commission's decision that she was not performing employment services at the time of her fall. We agree and reverse and remand for an award of benefits.

There is no dispute about the relevant facts. Wood was employed by appellee Wendy's Old Fashioned Hamburgers (Wendy's) as a crew trainer. On January

29, 2008, she worked a full shift and left around 4:00 p.m. She received a call asking her to return to work at 5:00 p.m., which she did. At 8:00 p.m., when her second shift ended, Wood clocked out at the cash register, then turned to exit the restaurant through the rear door by walking through the food-preparation and kitchen areas. (Wood testified that all Wendy's employees were required |₂to enter and exit through the rear door.) She took two to three steps toward the exit and encountered her good friend and co-manager Delilah Stroud, who was leaning against the Frosty machine. As she walked by Stroud, Wood leaned over (still facing her exit pathway) and used her right arm to give Stroud a one-armed hug. Stroud reciprocated with her left arm. After the hug, Wood stepped away to leave and immediately fell.[1] As a result of the fall, Wood injured her knee, which required surgery and physical therapy.

Matthew Jackson, also a Wendy's employee, witnessed Wood's fall. He was standing at the cash register when Wood walked by him toward the exit of the restaurant. As she departed, he saw her pause for a second "just to give [Stroud] a hug bye." According to Jackson, Wood did not face Stroud or go out of her way to hug Stroud. At one point he stated that Wood may have changed her footwork in order to hug Stroud, but he later testified that he was not sure. Jackson said that as soon as Wood let go of Stroud, Wood fell.

Jackson also corroborated Wood's testimony that Wendy's employees were required to clock out at the register at the end of their shifts and that they were instructed to enter and exit the rear door. He estimated that the width of the walkway between the sandwich-preparation area and the Frosty machine was less than

two feet. He confirmed that in order for Wood to exit the restaurant, she had to walk by Stroud. He further testified, as did Wood, that there were occasions where employees were asked to perform work for Wendy's after clocking out, but that on the date in question, Wood had not been assigned any such duties.

|₃The administrative law judge found that Wendy's employees were required to enter and exit the rear door of the restaurant; that prior to the hug, Wood was performing employment services by exiting at the point mandated by her employer; and that the hug had ended when Wood fell. However, the ALJ further found that the hug was a deviation and that Wood

> had not resumed her journey to depart the premises. . . . She had stepped back from Stroud to pivot to continue through the kitchen when she fell. [Wood] was thus not "back on the beam," but was instead still on the deviation. Hence, she was not performing employment services at the crucial point.

Accordingly, the ALJ found that Wood failed to prove that her fall occurred within the course and scope of her employment and denied her claim. The Commission affirmed and adopted the ALJ's opinion, and Wood timely appealed. The primary issue presented on appeal is whether Wood was performing employment services at the time of her injury.

■ In appeals involving claims for workers' compensation, we view the evidence in a light most favorable to the Commission's decision and affirm that decision if it is supported by substantial evidence. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 375, 284 S.W.3d 57, 60 (2008). Substantial evidence exists if reasonable

---

1. It was undisputed that the area where Wood fell was often slippery due to grease accumu- lation, a leak in the ceiling, food spills, and moisture leaks from a refrigerator.

minds could reach the Commission's conclusion. *Id.* at 375, 284 S.W.3d at 60. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.*, 284 S.W.3d at 60. If so, the appellate court must affirm the Commission's decision. *Id.*, 284 S.W.3d at 60.

Act 796 of 1993 significantly changed the workers' compensation statutes and the way workers' compensation claims are to be resolved. *Id.* at 376, 284 S.W.3d at 60. Pursuant to Act 796, we are required to strictly construe the workers' compensation statutes. *Id.*, 284 S.W.3d at 60 (citing Ark.Code Ann. § 11–9–704(c)(3) (Repl. 2002)). Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment." Ark.Code Ann. §. 11–9–102(4)(A)(i) (Supp.2009). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark.Code Ann. § 11–9–102(4)(B)(iii) (Supp. 2009). Act 796 fails, however, to define the phrase "in the course of employment" or the term "employment services." *Texarkana Sch. Dist.*, 373 Ark. at 376, 284 S.W.3d at 61. Thus, it falls to the court to define these terms in a manner that neither broadens nor narrows the scope of Act 796. *Id.*, 284 S.W.3d at 61.

■■■ Our supreme court has held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer." *Texarkana Sch. Dist.*, 373 Ark. at 376, 284 S.W.3d at 61. We use the same test to determine whether an employee was performing employment services as we do when determining whether an employee was acting within the course of employment. *Id.*, 284 S.W.3d at 61. Specifically, it has been held that the test

is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* at 376–77, 284 S.W.3d at 61. The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Id.* at 377, 284 S.W.3d at 61. Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Id.*, 284 S.W.3d at 61.

■■■ In this case, the Commission found that Wood was performing employment services as she attempted to exit the restaurant at the mandated point. However, in denying benefits, the Commission also found that Wood's hug was a deviation from employment services. Wood argues that there is a lack of substantial evidence supporting the latter conclusion. She contends that she did not deviate from her path when she hugged Stroud because Stroud was standing within the two-foot-wide space through which she was required to walk to exit the restaurant. She also argues that the hug consumed a brief second of time and that it did not alter her direction of travel. She likens the hug to a handshake between individuals who are parting company, and she argues that such actions are merely hesitations, not deviations. Finally, she argues that the facts in her case significantly differ from cases where deviations have been found to have occurred. We agree.

In Arkansas, deviations from the work path have been significantly greater than leaning over or taking a step toward someone. In *Lytle v. Arkansas Trucking Services*, an over-the-road truck driver was injured in an accident 100 miles off his

direct route. 54 Ark. App. 73, 75, 923 S.W.2d 292, 293 (1996). Our court affirmed the Commission's denial of benefits, holding (among other things) that substantial evidence supported the conclusion that the truck driver deviated from his employment. *Lytle,* 54 Ark. App. at 78, 923 S.W.2d at 295. In *Bunny Bread v. Shipman,* 267 Ark. 926, 930–31, 591 S.W.2d 692, 695 (1980), a bread-company route salesman was held to have deviated[2] from his work when he was injured while stopped to aid someone stranded on the road. *See also Clardy v. Medi–Homes LTC Servs. LLC,* 75 Ark. App. 156, 162–63, 55 S.W.3d 791, 794–95 (2001) (affirming denial of benefits to an employee who walked ten feet off her work path to visit with an off-duty co-employee).

The facts in the case at bar are distinguishable from *Lytle, Bunny Bread,* and *Clardy.* Here, the undisputed evidence established that Wood did not venture off her path. There was no room to do that because she was forced to navigate a two-foot-wide walkway in order to exit her workplace. She had to walk by Stroud to reach the rear exit of the restaurant. At most, Wood leaned into a friend, or took one step toward a friend, who happened to be standing in her way. Wood said that she did not turn to face Stroud when she hugged her. She just stuck out one arm and hugged Stroud as she passed. Wood stated that there was nothing about the hug that caused her to fall, and she believed that she would have fallen regardless of the hug.

The only evidence cited by the Commission in support of its conclusion that Wood deviated from the path was Wood's testimony that after the hug "all she had to do

is turn and go" and Jackson's testimony that Wood may have had to modify her steps to hug Stroud. Assuming Wood did twist her body or take a step toward Stroud, this cannot be reasonably construed as a deviation. Therefore, we hold that these facts do not constitute substantial evidence supporting the Commission's conclusion that Wood's one-armed-hug, while exiting the employment premises, was a deviation from her performance of employment services.

Assuming arguendo that the hug was a deviation, substantial evidence does not support the conclusion that the deviation had not ended at the time of the fall. The Commission found that Wood "ceased hugging Stroud." In support of this finding, it pointed out that Stroud was not pulled down when Wood fell, and Stroud did not catch Wood or prevent the fall. However, it continued by stating that at the time of the fall Wood was not "back on the beam." This analogy is improper in this instance because, as stated above, Wood never left "the beam" in the first place; the undisputed evidence established that "the beam" was a two-foot-wide pathway leading to the exit. But assuming the hug was a deviation, all evidence points to the Commission's conclusion that it was over. Once an employee has completed the deviation, she is once again performing employment services. *Sw. Ark. Dev. Council, Inc. v. Tidwell,* 95 Ark. App. 27, 30–31, 233 S.W.3d 190, 193 (2006) (affirming award of benefits where an employee—who drove from one client's home to another's, stopped at a convenience store for a drink, returned to the highway, and was struck by another vehicle—completed

---

**2.** It should be noted that our supreme court in *Bunny Bread,* applying the "liberal approach ... to draw all reasonable inferences favorable to the claimant," also held that sub-

stantial evidence supported the Commission's conclusion that the deviation—aiding a stranded driver—was insubstantial. 267 Ark. at 929, 931, 591 S.W.2d at 694, 695.

her deviation and was not removed from the realm of employment service).

Wendy's argues that Wood was not performing employment services when she fell because the undisputed facts established that she was clocked out at the time of the fall, she was not being paid, and she had no job duties to perform as she exited the restaurant. These facts are not dispositive on the issue of employment services. It has been held that an injury is compensable—despite the fact that the employee was on a break or not officially clocked in—because the employee was performing employment services at the time the injury occurred. *Texarkana Sch. Dist.*, 373 Ark. at 377–78, 284 S.W.3d at 61–62 (affirming the Commission's decision, finding that an injury suffered by a janitor while opening a gate during his return from his lunch break was compensable because he was performing employment services at the time the injury occurred); *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998) (reversing and remanding Commission's decision that custodian of school was not performing employment services at time of injury because he was only entering the premises; evidence demonstrated that custodian's job required him to check the alarm system when he entered the school, which is what he was doing when he fell); *Caffey v. Sanyo Mfg. Corp.*, 85 Ark. App. 342, 154 S.W.3d 274 (2004) (affirming Commission's decision that claimant, who fell minutes before clocking in at work but after she showed her badge to two different security officers—a job requirement—was performing employment services at the time of her fall).

Based on the above, we hold that substantial evidence does not support the Commission's conclusions that Wood's hug was a deviation and that the deviation was not complete at the time of her fall. Accordingly, we hold that Wood's injuries occurred while she was performing employment services. Therefore, we reverse and remand for an award of benefits.

Reversed and remanded.

PITTMAN and BROWN, JJ., agree.