**Roselie GINGRAS, Appellant**

v.

**LIBERTY BANK and CNA Insurance Company, Appellees.**

**No. CA 10–426.**

Court of Appeals of Arkansas.

Feb. 2, 2011.

Frank Baucum Newell, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Roselie Gingras appeals the decision of the Arkansas Workers' Compensation Commission finding that she failed to prove a compensable injury to her left wrist, which she injured while fleeing from a masked gunman. She contends that there is a lack of substantial evidence supporting the Commission's decision that her injury did not arise out of and in the course of her employment with appellee Liberty Bank. We disagree and affirm.

Testimony at the hearing before the Administrative Law Judge (ALJ) revealed the following. Gingras was employed by Liberty Bank as a teller. Part of her duties included opening and closing the bank, for which she was given a key to the bank and the vault codes. On April 9, 2007, she left work at the end of her shift, went to H & R Block to finalize her taxes, and then to her home. Upon entering her kitchen, she saw a man wearing an "eerie" plaster-like mask, a hat, and glasses. He stepped closer to her and said, "I'm not here to hurt you. It'll be all right." However, seeing that the man was holding a gun, Gingras ran toward the front door. The man grabbed Gingras's hair and pulled her back, but she was able to wiggle free and run out of her house. As she ran down the front porch steps, she fell and injured her left wrist. She continued to run across the street to an RV park, where she hid under a table and called the police. While in hiding, she saw the masked man run into the woods.

The next day, Gingras received medical treatment for a fractured wrist. She wore a cast and a brace for a number of weeks and received physical therapy. At the time of the hearing, she testified that her

Jason Matthew Hatfield, Fayetteville, for appellant.

wrist was "okay" and that she had ceased treatment for it. However, she testified that her life had changed since the incident and that she was a "nervous wreck" at home.

Detective David Williams of the Fayetteville Police Department investigated the crime against Gingras. He testified that a man across the street, Neil Crawford, witnessed a masked man running from Gingras's home. Detective Williams stated that a mask meeting the description given by Gingras and Crawford was found in the woods within one-hundred yards of Gingras's home. The mask was sent for DNA testing at the Arkansas State Crime Laboratory. The detective also found a gun left by the masked man at Gingras's home. It was an older model, nine-millimeter Beretta with a filed-off serial number.

Initially, Detective Williams believed the motive for the attack was robbery, attempted rape, or attempted murder, but was unable to solve the crime. Some time later, the results of DNA testing returned, matching an individual named Gary Huddleston, who was in jail in Texas. Detective Williams learned from Texas law-enforcement officers that Huddleston and an accomplice had allegedly surveilled a Texas bank, followed a bank teller home, and held her and her husband at gunpoint, threatening to kill both of them unless the teller opened the bank. The detective also learned that Huddleston or his accomplice allegedly stole an unregistered, older model, nine-millimeter Beretta from the Texas victims. Detective Williams testified that Huddleston was awaiting trial in Texas, but offered no information as to what the charges were against Huddleston.

Armed with this new information, Detective Williams suspected that Huddleston was responsible for the attack on Gingras and that his motive was to rob Liberty Bank. After Gingras confirmed with the detective that she had a key to Liberty Bank and she opened the bank, the detective drafted a document entitled "Case Summary/Warrant Request" identifying Huddleston as a suspect in Gingras's case. This document is not signed or attested to by Detective Williams. At the time of the hearing before the ALJ, no one, including Huddleston, had been tried for the attack on Gingras.

The ALJ found that Gingras failed to prove that she suffered a compensable injury on April 9, 2007. The ALJ wrote:

[Gingras's] case depends upon her contention that Huddleston was present in her home in order to rob [Liberty Bank] by requiring her to open the bank and the bank vault. Unfortunately for [Gingras] there is no direct evidence supporting her contention that the man in her home was there to rob the bank. Fortunately, [Gingras] was able to escape before the man in her home could grab her. [Gingras] testified at her deposition that the man's only statement was, "I'm not here to hurt you. It'll be all right." Thus, [Gingras's] attacker did not make any statement regarding his intent or motive on the night of April 9, 2007.

In denying compensability, the ALJ acknowledged the facts that a mask with Huddleston's DNA in it was found near Gingras's home and that a gun found at her home matched the description of a gun that was involved in the crime that allegedly occurred in Texas. However, the ALJ stated that these facts did not supply a motive for the attack on Gingras. Furthermore, the ALJ found that the hearsay evidence about the crime in Texas also failed to establish by implication a motive for the crime against Gingras. The ALJ noted that the crime against Gingras may or may not have been committed by Huddleston, and assuming the assailant was

Huddleston, there was insufficient credible evidence indicating that the motive for the assault was the robbery of the Liberty Bank.

Lastly, the ALJ stated that the issue was not simply whether Gingras was advancing Liberty Bank's interest directly or indirectly at the time of her injury, but also whether her injury occurred within the time and space boundaries of her employment. "While it is not required that an employee be 'on the clock' or physically at their place of employment at the time of an injury for an accident to be compensable, it would be difficult to find that this claimant was within the time and space boundaries of her employment at the time her accident occurred."

Gingras appealed the ALJ's decision to the Commission, but then moved to remand the case to the ALJ for the consideration of new evidence. The new evidence included the affidavit of Detective Williams, which had two unauthored, handwritten notes attached to it.[1] The Commission denied Gingras's motion to remand; however, it admitted the affidavit and attachments into evidence. Two months later, after "carefully conduct[ing] a de novo review of the entire record," the Commission affirmed and adopted the ALJ's opinion denying compensability. Gingras timely appealed.

■ In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm that de-

cision if it is supported by substantial evidence. *Texarkana School Dist. v. Conner,* 373 Ark. 372, 375, 284 S.W.3d 57, 60 (2008). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.,* 284 S.W.3d at 60. The issue is not whether the appellate court might have reached a different result from the Commission, but rather whether reasonable minds could reach the result found by the Commission. *Id.,* 284 S.W.3d at 60. If so, the appellate court must affirm the Commission's decision. *Id.,* 284 S.W.3d at 60.

■ The pivotal issue presented in this case is whether substantial evidence supports the Commission's decision that Gingras did not suffer a compensable injury when she fractured her wrist while running out of her house from a masked gunman. Act 793 of 1993 defines a compensable injury as "[a]n accidental injury ... arising out of and in the course of employment and which requires medical services or results in disability or death." Ark. Code Ann. § 11–9–102(4)(A)(i) (Supp.2009). Gingras contends that the Commission's decision finding that her injury did not arise out of and in the course of her employment is not supported by substantial evidence. We disagree.

■ In this case, the Commission found that Gingras had not met her burden of proof that her injury arose out of her employment with Liberty Bank. "Arising out of the employment" refers to the origin

---

1. Detective Williams's affidavit stated that the handwritten notes were provided to him by "the prosecutor in Texas." According to the detective, one page of the notes included lists of numbers that represented radio frequencies used by the Fayetteville Police Department and vehicle descriptions, three of which belonged to employees of Liberty Bank in April 2007. The second page of handwritten notes included a list of phone numbers and hours of operation for all of the Liberty Banks in Northwest Arkansas and a list of bank addresses in Fayetteville. The detective concluded his affidavit as follows: "I spoke with Huddleston regarding his conviction for the Texas crime and his involvement in the crime against Miss Gingras, including his objective of robbing Liberty Bank, and I feel confident that he will cooperate and offer a formal statement of admission in the present case."

or cause of the accident. *Swaim v. Wal–Mart Assocs., Inc.*, 91 Ark.App. 120, 125, 208 S.W.3d 837, 841 (2005). The Commission pointed out that there was no direct evidence that the man in Gingras's home was there to rob the bank. There was no evidence before the Commission that the attacker had been identified; therefore, it cannot be established that Gingras knew the attacker or had some prior encounter with the attacker in her capacity as an employee of Liberty Bank. This fact makes the instant case distinguishable from *Jones v. City of Imboden*, 39 Ark.App. 19, 832 S.W.2d 866 (1992) (a pre–1993 Act case, holding that an attack on an ex-fire marshal by a man who had previous physical encounters with the ex-fire marshal arose out of and in the course of employment), upon which Gingras relies.

The only direct evidence of the assailant's motive in this case was the lone statement of the assailant to Gingras—"I'm not here to hurt you. It'll be all right." The assailant did not ask Gingras for her bank key or vault codes, he did not ask her to take him to the bank, and he did not ask her to open the bank. The Commission correctly stated that the "attacker did not make any statement regarding his intent or motive on the night of April 9, 2007." Therefore, another case upon which Gingras relies, *Craig v. Electrolux Corp.*, 212 Kan. 75, 510 P.2d 138 (1973) (affirming Commission's decision that the murder of an employee, who worked as a salesman and collected his own accounts, arose out of and in the course of employment based upon the admission of one of the attackers that it was their intent to rob the employee because they saw him with "a [7]great deal of money"), is also distinguishable. In the present case, the only statement of the assailant fails to reveal a motive to rob Liberty Bank. Accordingly, we hold that there is substantial evidence supporting the Commission's decision that the attack on Gingras did not arise out of her employment with Liberty Bank.

We likewise hold that there is substantial evidence supporting the Commission's decision that the attack on Gingras was not in the course of her employment. The phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred. *Swaim*, 91 Ark.App. at 125, 208 S.W.3d at 841. We use the same test to determine whether an employee was performing employment services as we do when determining whether an employee was acting within the course of employment. *Texarkana School Dist.*, 373 Ark. at 376, 284 S.W.3d at 61. The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* at 376–77, 284 S.W.3d at 61. The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Id.* at 377, 284 S.W.3d at 61.

The Commission found that Gingras was not within the time and space boundaries of her employment at the time of her attack, and there is substantial evidence to support this finding. Gingras was at home when she was attacked. She testified that she had completed her work day and that she was not on call. She testified in her deposition that she never had to return to work after her shift ended.

Gingras correctly argues that simply because she was not on the work premises and had [8]"clocked off" work at the time of her injury does not prevent a finding that she suffered a compensable injury. *Texarkana Sch. Dist.*, 373 Ark. at 377–78, 284 S.W.3d at 61–62 (affirming the Commis-

sion's decision that an injury suffered by a janitor while opening a gate as he returned from his lunch break was compensable because he was performing employment services at the time the injury occurred); *CV's Family Foods v. Caverly*, 2009 Ark. App. 114, 304 S.W.3d 671 (holding that an off-duty night manager who injured himself while walking an employee to her car at night was performing employment services at the time of injury because it benefitted the employer by ensuring the safety of the employee and the premises). However, in the instant case, the Commission found that Gingras, at the time she was attacked, was not performing employment services. Gingras suggests that she was acting for the benefit of the bank at the time of the attack because she was required by the bank to carry a bank key and vault codes. However, the Commission did not make any findings on this point, and we do not act as the fact finder. *Pulaski County Special School Dist. v. Stewart*, 2010 Ark. App. 487, 375 S.W.3d 758.

We acknowledge the existence of circumstantial evidence suggesting the possibility that the attack on Gingras could have been motivated by someone desiring to rob Liberty Bank. However, the existence of this circumstantial evidence does not require reversal of the Commission's decision. Based upon our standard of review, the only question before us is whether substantial evidence supports the Commission's finding that Gingras's injury did not arise out of and in the course of her employment. On appeal, the issue is not whether this court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding; if reasonable minds could reach the result shown by the Commission's decision, we must affirm the decision. *Systems Contracting Corp. v. Reeves*, 85 Ark.App. 286,

292, 151 S.W.3d 18, 23 (2004). We think reasonable minds could interpret the evidence as did the Commission, and we therefore affirm the Commission's finding that Gingras's injury did not arise out of and in the course of her employment with Liberty Bank. Accordingly, we affirm the Commission's denial of benefits.

Affirmed.

GRUBER and ABRAMSON, JJ., agree.