2014 Ark. App. 185
**Billy HILL d/b/a V & H Tire Service, Appellant**

v.

**Cheyne H. TREADAWAY, Appellee.**

No. CV–13–999.

Court of Appeals of Arkansas.

March 12, 2014.

Dover Dixon Home, PLLC, Little Rock, by: William C. Bird, III, for appellant.

Law Offices of Gary Green, Little Rock, by: Michael A. LeBoeuf, for appellee.

WAYMOND M. BROWN, Judge.

Appellant appeals from the Arkansas Workers' Compensation Commission's (Commission) reversal of the administrative law judge's (ALJ) denial of benefits to appellee on finding that appellee proved that he sustained a compensable injury and proved that he was entitled to temporary total-disability benefits and reasonably necessary medical treatment. Appellant's sole point on appeal is that there was not substantial evidence to support the Commission's finding that appellee proved that he sustained a compensable injury and proved that he was entitled to temporary total-disability benefits and reasonably necessary medical treatment. We affirm.

Appellee had been employed by appellant as a mechanic for one week on August 31, 2008. On that date, appellee accompanied his brother, Tyler Treadaway, also employed by appellant, on Tyler's second service call.[1] While on that service call, appellee was injured when a tire exploded while he was airing it up. As a result, appellee sustained multiple injuries that required him to be transported by medflight to a hospital in Memphis where he underwent surgery.

Following the incident, appellee filed a claim for workers' compensation benefits; however, there is nothing showing the date appellee filed his claim for workers' compensation benefits, and appellant had no recollection of the same. It is clear from the record that appellant also filed a claim with the Commission regarding appellee's incident. Nothing in the record shows the date appellant filed his claim; however, it is clear that he learned that he did not have workers' compensation insurance upon so filing. Following an investigation by the Commission's Compliance Division, appellant was charged on October 22, 2008, with violation of Arkansas Code Annotated section 11–9–406(a) for failure to secure workers' compensation coverage.[2] He was found to be noncompliant and fined in an order dated December 11, 2008.[3] We note that it is not clear from the record whether appellant contested appellee's workers' compensation claim from its initial filing or only after learning that he was not insured.

A hearing on appellee's claim was held before an ALJ on February 21, 2013. At that hearing, appellee testified, in pertinent part, that he had worked for appellant for one week at the time of the incident; was hired as a diesel mechanic; and had no experience or training with truck

---

1. Testimony was in conflict regarding whether Tyler was on call, with appellee and Tyler asserting that Tyler was not on call and appellant asserting that Tyler was on call.

2. (Repl. 2002).

3. Appellant was fined $10,000.00, with $2,500.00 due to the Death and Permanent Total Disability Trust Fund within thirty days of the date of the order and the remaining $7,500.00 suspended with a provision that it would become due if appellant canceled his workers' compensation coverage. Appellant was also required to pay any valid claims which might have, or may be, filed against him during the period of his non-compliance.

tires. He further testified that another employee, James, was on call on the day of the incident, although Tyler was called to service a truck;[4] that Tyler said appellant told Tyler to take appellee with him on the call, which Tyler did;[5] and that appellee had completely repaired one tire and was in the process of airing up a second tire when "[that] tire exploded in [his] face." Finally, he testified that "there was no rule about one person going or two people going" on a service call.

In pertinent part, Tyler testified that appellee was not mentioned when he first received the service call from appellant, but that appellant "approved [Tyler] to take [appellee]" on the service call, "saying something to the effect of sure, take him along" when Tyler called back and requested appellee's assistance. He went on to testify that appellant did not ask any questions about whether appellee should have been at the site of the incident and "did not criticize or reprimand [Tyler] for taking [appellee]."

Appellant was the final person to testify. In pertinent part, he testified that appellee was not scheduled to work on the day of the incident; that Tyler, not James, was on call as he had the appellant's personal shop phone, which was always given to the person who was on call;[6] and that he told Tyler no when Tyler asked if appellee could go on the service call. Appellant gave three reasons for saying no to Tyler's request: (1) appellee was not on call, (2) appellant had a policy of never having more than one person on a service call for

safety reasons, and (3) appellee was inexperienced with the type of tire involved and therefore was not qualified to work the call.[7]

Appellant testified further that he had "no idea that [appellee] was in the truck" and that he questioned Tyler about appellee's presence at the service call when Tyler called to report the incident, though he did not bring it up when he arrived at the site due to worry for appellee's well-being.[8] Of note was appellant's testimony that he paid appellee's wife "$300 a week for several weeks after" the incident though appellee had only worked for one week at the time of the incident. He only stopped the payments upon learning that appellee's wife had retained an attorney, at which point he testified to stating "Okay. I'm not paying anymore."

Following the hearing, the ALJ issued an opinion on May 22, 2013, finding that appellee failed to carry his burden to prove that he had sustained a compensable injury. Following an appeal to the Full Commission, it issued an opinion on October 9, 2013, reversing the ALJ and finding that appellee proved he sustained a compensable injury and proved he was entitled to temporary total-disability benefits and reasonably necessary medical treatment.

This timely appeal followed.

 In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial

4. No last name is given for James.

5. Appellee admitted that he never spoke with appellant himself.

6. James was only a part-time detail person who would service a small car tire "every once in a while."

7. Appellant also gave a fourth reason, specifically, that he had seen appellee drinking a beer at the shop earlier on the day of the incident.

8. Appellant testified that he and Tyler completed the service call while appellee was being transported to the hospital.

evidence.[9] Substantial evidence exists if reasonable minds could reach the Commission's conclusion.[10] The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm.[11]

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts.[12] The Commission is not required to believe the testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief.[13]

The sole issue on appeal is whether there was substantial evidence supporting the Commission's finding that appellee proved that he sustained a compensable injury and proved that he was entitled to temporary total-disability benefits and reasonably necessary medical treatment. Appellant argues that the Commission erred in its findings of fact and application of the law regarding employment services. Specifically, appellant argues that the fact that "[a]ppellee was arguably advancing his employer's interest at the time of the accident" did not negate the fact that appellee, according to appellant, was performing employment services outside the time and space boundaries of his employment when the injury occurred. We disagree.

Pursuant to Act 796 of 1993, we are required to strictly construe the workers' compensation statutes.[14] Act 796 defines a compensable injury as "[a]n accidental injury ... arising out of and in the course of employment."[15] A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed."[16] Act 796 fails, however, to define the phrase "in the course of employment" or the term "employment services."[17] Thus, it falls to the court to define these terms in a manner that neither broadens nor narrows the scope of Act 796.[18]

Our supreme court has held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer."[19] This court uses the same

9. *Flynn v. J.B. Hunt Transp.*, 2012 Ark. App. 111, at 6, 389 S.W.3d 67, 70 (citing *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571, 2011 WL 4477865).

10. *Id.*

11. *Id.*

12. *Hope Sch. Dist. v. Wilson*, 2011 Ark. App. 219, at 4, 382 S.W.3d 782, 786 (citing *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 102, 289 S.W.3d 163, 167 (2008)).

13. *Id.*

14. *Wood v. Wendy's Old Fashioned Hamburgers*, 2010 Ark. App. 307, at 4, 374 S.W.3d 785, 788 (citing *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 375, 284 S.W.3d 57, 60 (2008) (citing Ark.Code Ann. § 11–9–704(c)(3) (Repl. 2002))).

15. *Id.* (citing Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2009)).

16. *Id.* (citing Ark.Code Ann. § 11–9–102(4)(B)(iii)).

17. *Id.* (citing *Texarkana Sch. Dist.*, 373 Ark. at 376, 284 S.W.3d at 61).

18. *Id.*

19. *Wood, supra*, at 4, 374 S.W.3d at 788 (citing *Texarkana Sch. Dist.*, 373 Ark. at 376, 284 S.W.3d at 61).

test to determine whether an employee was performing employment services as we do when determining whether an employee was [7]acting within the course of employment.[20] The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." [21] The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury.[22] Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case.[23]

The parties stipulated to an employee-employer-carrier relationship between appellant and appellee on August 31, 2008. There was no denial by either party that appellee was injured. Likewise, there was no disagreement on the same between the ALJ and the Full Commission. In reversing the ALJ's decision, the Commission's decision relied totally on testimony, which was the only non-medical evidence offered by either party. In finding that appellee was directly advancing the employer's interests at the time of the incident, the Full Commission stated:

[T]he testimony of Tyler Treadaway and Cheyne Treadaway are entitled to significant evidentiary weight, and we find

that Tyler and Cheyne's testimony was more credible than Billy Hill's testimony.

. . .

[8]Moreover, the Full Commission does not find credible Billy Hill's assertion that he did not "authorize" the claimant to assist in repairing the truck tires on August 31, 2008.

. . .

We note Tyler's testimony that he, like the claimant, was inexperienced in repairing large truck tires.

The Full Commission noted further appellant's agreement that V & H Tire benefited from the work appellee performed on August 31, 2008. From this, it is obvious that the Commission's decision to reverse was based on issues of credibility alone.

As our law currently stands, the Commission hears workers' compensation claims de novo on the basis before the ALJ, and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible.[24] Because questions of credibility are the exclusive province of the Commission, which is not required to believe the testimony of the appellant or any other witnesses and may choose what it deems worthy of belief, we are foreclosed from determining the credibility and weight to be accorded to each

20. *Gingras v. Liberty Bank*, 2011 Ark. App. 65, at 6, 381 S.W.3d 112, 116 (citing *Texarkana Sch. Dist.*, 373 Ark. at 376, 284 S.W.3d at 61 (2008)).

21. *Id.* (citing *Texarkana Sch. Dist.*, 373 Ark. at 376–77, 284 S.W.3d at 61).

22. *Id.* (citing *Texarkana Sch. Dist.*, 373 Ark. at 377, 284 S.W.3d at 61).

23. *Hudak–Lee v. Baxter Cnty. Reg'l Hosp.*, 2011 Ark. 31, at 5, 378 S.W.3d 77, 80 (citing *Texarkana Sch. Dist.*, 373 Ark. at 377, 284 S.W.3d at 61).

24. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, at 6, 373 S.W.3d 347, 351 (citing *Bray v. Int'l Wire Grp.*, 95 Ark.App. 206, 235 S.W.3d 548 (2006)).

witness's testimony.[25] Accordingly, we affirm.

Affirmed.

PITTMAN and WYNNE, JJ., agree.

**25.** *Hudak–Lee, supra,* at 5, 378 S.W.3d at 80 (citing *Cedar Chem. Co. v. Knight,* 372 Ark. 233, 273 S.W.3d 473 (2008); *Arbaugh v. AG Processing, Inc.,* 360 Ark. 491, 202 S.W.3d 519 (2005); *see also Ozark Natural Food v. Pierson,* 2012 Ark. App. 133, 389 S.W.3d 105; *Diggs v. Cattlemen's Livestock Market, Inc.,* 2010 Ark. App. 311, 374 S.W.3d 806).