2015 Ark. App. 265

**Jerry COSSEY, Appellant,**

v.

**PEPSI BEVERAGE COMPANY, Appellee.**

No. CV–14–1037

Court of Appeals of Arkansas, DIVISION II.

Opinion Delivered April 22, 2015

---

Walker, Shock & Harp, PLLC, Fort Smith, by: Eddie H. Walker, Jr., for appellant.

Worley, Wood & Parrish, P.A., by: Melissa Wood, for appellee.

KENNETH S. HIXSON, Judge

Appellant Jerry Cossey suffered an admittedly compensable low-back injury on August 9, 1993, while working for appellee Pepsi Beverage Company, as he was moving a case of Pepsi in a convenience-store cooler. At that time, Cossey was in his mid-thirties. He was treated conservatively for an extended period of time, and eventually he was issued an eleven-percent anatomical impairment rating, which is not at issue on appeal. At issue in the current appeal is Cossey's entitlement to additional medical treatment for pain management and to wage-loss benefits in excess of the anatomical impairment rating. The administrative law judge found that Cossey was entitled to additional medical treatment and to twelve-percent in wage-loss disability benefits. On de novo review by the Commission, it found that Cossey was

not entitled to any additional medical treatment but that Cossey was entitled to twenty-five percent wage loss disability.[1]

Cossey appeals, and Pepsi cross-appeals. Cossey contends that there lacks substantial evidence to support denial of his request for additional medical treatment in the form of pain management, and that there lacks substantial evidence to support the inadequate award of wage-loss disability benefits. Pepsi cross-appeals, contending that there lacks substantial evidence to support any award of wage-loss disability benefits. We affirm on direct appeal and on cross-appeal.

In reviewing Commission decisions, we view the evidence in the light most favorable to the Commission's decision and affirm it if it is supported by substantial evidence. *Hill v. Treadaway*, 2014 Ark. App. 185, 433 S.W.3d 285. Substantial evidence exists if reasonable minds could reach the Commission's conclusion, and we will not reverse unless fair-minded persons could not have reached the same conclusion when considering the same facts. *Id.* Questions concerning the credibility of witnesses and weight of evidence, as well as the probative value of any medical evidence, are for the Commission to decide. *Id.* The Commission is not required to believe the testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* When the Commission denies benefits because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commis-

---

1. This was a divided opinion of the Commission. Accompanying the majority opinion, there were two concurring-in-part-and-dissenting-in-part opinions. One Commissioner agreed that no additional medical treatment was warranted, but disagreed that any wage loss was warranted. Another Commissioner disagreed on the denial of additional medical care and asserted that the wage loss award was warranted and should have been seventy-five percent. Regardless, our court reviews the majority decision of the Commission.

sion's decision displays a substantial basis for the denial of relief. *Howell v. Scroll Techs.*, 343 Ark. 297, 35 S.W.3d 800 (2001).

▬ The first issue on appeal concerns the denial of Cossey's request for additional medical treatment in the form of pain management. Arkansas Code Annotated section 11–9–508(a) requires employers to provide medical services that are reasonably necessary in connection with the compensable injury. A claimant bears the burden to establish by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury; it is a question of fact. *Cole v. Commerce & Indus. Ins. Co.*, 2009 Ark. App. 617, 2009 WL 3153322. A claimant may be entitled to additional treatment after the healing period has ended if it is geared toward management of the compensable injury. *Santillan v. Tyson Sales & Distribution*, 2011 Ark. App. 634, 386 S.W.3d 566. Here, the question is focused on whether there is a causal connection between the 1993 injury and the present need for pain management treatment. We hold that substantial evidence supports the finding that Cossey failed to prove entitlement to additional medical treatment.

Our review of the evidence shows that Cossey, now in his mid-fifties, began working for Pepsi in the late 1970s. As a route driver, he sold soft drinks, loaded a truck, and stocked shelves, which required lifting, bending, and stooping. It was undisputed that in August 1993, when Cossey was in his mid-thirties, he was stocking a convenience store cooler with cases of Pepsi when he experienced a "pop" in his back and the onset of low back pain. It was also undisputed that Cossey had a history of intermittent lumbar pain.

Cossey at first saw the company doctor but then was referred to Dr. Standefer, a neurosurgeon. X-rays taken around the time of this work injury showed multilevel degenerative disc disease and some associated disc space narrowing, osteophyte formation, and focal disc protrusion in the lumbar levels. He had mild muscle spasms. It was a nonsurgical injury; he was treated with analgesic medication and muscle relaxers, as well as a work-hardening exercise plan to strengthen his low back.

By December 1993, a functional capacity evaluation indicated that Cossey was capable of light work with some lifting restrictions. His physician opined in January 1994 that Cossey needed to avoid heavy lifting and repeated bending and probably should consider vocational training or higher education to enter into a different kind of work. With his multilevel lumbar disc disease, Cossey was expected to have low back pain and intermittent lower-extremity pain. Although given narcotic medication in the beginning, Dr. Standefer wanted Cossey to take as little as possible of that medicine and wean himself off of it.

In May 1995, a follow up visit to the doctor showed substantial improvement in regard to pain in his low back. His physician prescribed a physical therapy regimen, massage therapy, and ultrasound therapy for about a month, although Cossey "feels that he is back to his baseline level of activity." Cossey remained off work.

Cossey was the subject of surveillance in the summer of 1995, and he was observed repeatedly bending, working on his vehicle, carrying heavy objects, and weed-eating his yard. In October 1995, Cossey followed up with his doctor where his condition was deemed unchanged from prior months, having "done reasonably well." He was noted to be taking classes at Westark. He was recommended to use over-the-counter anti-inflammatory medication

and to be careful with lifting and bending. Dr. Standefer noted that prior radiographic studies showed "findings consistent with degenerative disc disease at multiple levels," which was sufficiently severe "to account for his pain." In January 1996, he was assessed a ten-percent permanent partial impairment rating by Dr. Standefer.

Over the next several years, Cossey would return for a follow up examination with his physician, who consistently recommended conservative care for his non-surgical low-back pain. The treatments included epidural steroid injections, exercise programs, and over-the-counter medications as needed. Another functional capacity evaluation in 2000 indicated that Cossey could perform light duty in a part time capacity. In 2002, Dr. Standefer opined that his chronic back pain was based on his underlying degenerative changes.

By June 2003, Cossey was seen for an independent medical evaluation by Dr. Knox. At that time, Cossey was forty-four years old. Dr. Knox gave Cossey an eleven-percent anatomical impairment rating. Intermittent steroid injections were given to Cossey in his lumbar spine. His primary physician opined in February 2007 that Cossey was not able to work in any capacity. This opinion did not change through 2009, although the pathology was noted to be long-standing degenerative disc disease.

Another independent medical review was done on Cossey in October 2009 by Dr. Calhoun. At that point, Cossey was fifty years old. Dr. Calhoun reviewed Cossey's care and treatment over the years for degenerative disc disease. Dr. Calhoun believed that Cossey would need chronic narcotics and other medications for his pain. Another physician saw Cossey in 2011, offering to provide non-narcotic conservative care for his chronic low back pain, but Cossey rejected that doctor's care. In November 2012, Dr. Cannon saw Cossey for chronic pain, and Dr. Cannon prescribed narcotic and non-narcotic medications.

In October 2013, Cossey saw Dr. Martimbeau for yet another independent medical evaluation, who opined that Cossey had chronic low back pain "secondary to a multilevel degenerative osteoarthritis of the lumbosacral spine from L1–2 to L5–S1." When asked whether the current need for treatment was reasonable and medically necessary for his August 1993 injury, Dr. Martimbeau opined that all the treatment and diagnostic medications over the previous twenty years was related to the chronic degenerative condition and not the work-related strain of his lumbar spine. Dr. Martimbeau opined that none of the medications Cossey was currently taking were necessary for the original lumbar strain. Dr. Martimbeau later opined that Cossey should have been able to return to work in May 1995, albeit with no heavy lifting.

Cossey had not worked in twenty years, since his time with Pepsi. He received monthly social security disability benefits as well as retirement from Pepsi, totaling over $2500 per month. He had not looked anywhere for work since 1993, although he stated that he asked for a less strenuous job with Pepsi many years prior but was not offered one. He quit his college course work prior to completing a business degree. Cossey also admitted that he had a vehicle accident in 2008 that hurt his back; he settled that case for payment of his medical bills and $12,000.

Cossey filed a workers' compensation claim for wage-loss benefits in excess of the eleven percent whole body impairment rating and for additional medical treatment to include pain management. Pepsi

responded that it had paid all reasonable and necessary medical treatment related to the 1993 compensable injury, that if any treatment was needed it was causally related to a pre-existing and unrelated medical condition, and that no wage loss was warranted.

The Commission found that Cossey was at maximum medical improvement ("MMI") in January 1996, when Cossey was first given an impairment rating. Despite his having reached MMI, the Commission noted, Pepsi continued to provide conservative care for years thereafter. The Commission found Dr. Martimbeau's opinions were entitled to great weight in making its finding that appellant's 1993 muscle strain had long since healed and did not require ongoing medical treatment. The Commission found that all the medical records were consistent in recognizing that appellant suffered a chronic, progressive, unrelated degenerative disease, which was the cause for the need for treatment. The question of reasonable and necessary treatment in relation to a compensable injury is a question of fact for the Commission to resolve, and we hold that there is substantial evidence of record to support the denial of additional medical treatment as not related to his 1993 work injury. *Compare Walker v. United Cerebral Palsy of Ark.,* 2013 Ark. App. 153, 426 S.W.3d 539. We affirm the denial of additional medical treatment as not reasonably necessary in relation to the 1993 work injury.

This brings us to Cossey's second point on appeal, where he contends that the Commission should have awarded him greater than twenty-five percent in wage-loss disability benefits, over and above his permanent partial impairment rating. Pepsi disagrees that any wage-loss benefits were warranted or proved by Cossey, cross-appealing that finding.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Wal–Mart Assoc., Inc. v. Keys,* 2012 Ark. App. 559, 423 S.W.3d 683. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors. *Id.* The Commission is charged with the duty of determining disability based upon consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, work experience, motivation, post-injury income, demeanor, and credibility. *Miller v. White Hall Sch. Dist.,* 2010 Ark. App. 460, 2010 WL 2195749.

Here, the Commission awarded Cossey twenty-five percent in wage-loss disability benefits, more than that awarded by the administrative law judge. The Commission recognized that Cossey was middle aged, had work experience primarily in the manual labor fields, but also noted that functional evaluations over the years showed his capacity to work in light duty with lifting restrictions. The Commission considered the evidence dating back to 1995 that appellant was observed performing strenuous yard work and other physical activities for his own purposes, and it deemed Cossey not credible in his assertion that he could not attend college or sit or stand due to his 1993 work injury but was more likely disinterested in returning to any appropriate suitable employment.

Cossey contends that his compensable low-back injury suffered in 1993 has more seriously affected his present ability to earn a meaningful wage. Cossey specifically asserts that there is evidence of record to support a greater wage-loss disability award. On the other hand, Pepsi contends that Cossey is not wage disabled at all due to his 1993 work injury. This,

as always, is a fact-intensive inquiry in which all the specific facts of this claimant's age, abilities, education, physical and mental limitations, motivation, and demeanor and any other factor deemed relevant are to be considered. Ark.Code Ann. § 11–9–519(e). *See also R.L. Landscaping v. Jones,* 2010 Ark. App. 304, 374 S.W.3d 761; *Maulding v. Price's Utility Contractors, Inc.,* 2009 Ark. App. 776, 358 S.W.3d 915. Given this fact-intensive inquiry, and viewing the evidence in the light most favorable to the Commission's decision as we must, we hold that reasonable minds could conclude that appellant was entitled to twenty-five percent wageloss disability in excess of his permanent partial impairment. *Compare Logan County v. McDonald,* 90 Ark. App. 409, 206 S.W.3d 258 (2005).

Affirmed on direct appeal and on crossappeal.

Kinard and Glover, JJ., agree.