

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-871

| | |
|---|---|
| TARGET CORPORATION and SEDGWICK CLAIMS MANAGEMENT <br><br> APPELLANTS <br><br> V. <br><br><br> RENE BUMGARNER <br> APPELLEE | **Opinion Delivered** FEBRUARY 18, 2015 <br><br> APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G303657] <br><br><br> AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellants Target Corporation ("Target") and Sedgwick Claims Management appeal from an August 26, 2014 opinion by the Arkansas Workers' Compensation Commission ("Commission") affirming and adopting the findings of fact and conclusions of law made by the Administrative Law Judge ("ALJ") in favor of appellee Rene Bumgarner. On appeal, appellants contend that no substantive proof exists to connect appellee's desired additional medical treatment to her May 1, 2013 work injury. We affirm.

On April 16, 2014, Bumgarner testified that she was fifty-one years old at the time of the hearing and had been working for Target since August of 2002. Prior to her May 1, 2013 injury, Bumgarner worked as the "hard lines team lead." Her job duties consisted of putting products on shelves, zoning, and lifting heavy products. Her job also included placing furniture on shelves and using ladders to get products from the warehouse. It is undisputed

SLIP OPINION

that appellee sustained a compensable injury on May 1, 2013. Bumgarner testified that she injured herself after she used a ladder to take a product down from the back room. She thought she was on the last step but instead was on the second to last step. When she stepped off, she testified that her left foot made contact on the ground but her "knee pushed away from [her] body laterally, snapped, and [she] fell down." She initially was sent to a walk-in clinic in Springdale, Arkansas, after which she was referred to Dr. Christopher A. Arnold in Fayetteville.

Prior to her 2013 injury, Bumgarner had been seen and treated by Dr. Arnold for pre-existing problems with her left knee. She had undergone a surgical procedure by Dr. Robert Tomlinson on her left knee in August of 2009, which she admitted was not caused by any specific event. After injuring her knee again in Afghanistan during her service in the Kansas National Guard, she underwent another surgical procedure by Dr. Arnold on April 1, 2011. She testified that she continued to see Dr. Arnold until her 2013 injury and received cortisone injections for arthritic problems that she was having.

After the May 1, 2013 injury, she testified that Dr. Arnold performed another surgery in August of 2013. Afterward, she returned to light duty work, involving a "sit-down job," but her employment with Target was subsequently terminated. Bumgarner testified on redirect examination that she wanted to undergo the additional surgery recommended by Dr. Arnold.

The medical evidence corroborated Bumgarner's testimony. The January 14, 2011 MRI report of Bumgarner's left knee reflected that there was an irregularity of the cartilage



in the medial compartment consistent with low-grade chondromalacia, no evidence of bone contusion or occult fracture, and a cleavage tear of the medial meniscus. However, the lateral meniscus was intact. In Dr. Arnold's May 31, 2011 notes, he states that Bumgarner may someday be a candidate for meniscal allograft or cartilage salvaging procedure. However, he also stated that he wanted her to "get over this" before he assessed her for that. The June 21, 2013 MRI report of Bumgarner's left knee reflected that there was a high-grade partial tear of the anterior cruciate ligament, likely degenerative tearing of the posterior horn and body of the medial meniscus, a Grade IV chondromalacia of the weight-bearing surface of the medial femoral condyle, and a bone marrow contusion involving the posterior aspect of the lateral tibial plateau and lateral aspect of the lateral femoral condyle. In Dr. Arnold's June 25, 2013 notes, he stated that he reviewed the MRI report and that while she had some pre-existing wear in her knee, she had new findings after her 2013 injury. "I scoped her knee two years ago. At that point, the ACL was intact. At that point, her medial femoral condyle had grade 2 chondral changes. On her exam today, she has a grossly positive Lachman which is new compared to prior to the injury. She also has MRI findings consistent with a pivot shift phenomenon which is indicative of the ACL insufficiency."

On December 17, 2013, Dr. Charles Pearce opined that Bumgarner was not at maximum medical improvement and that she would benefit from another two to four months of physiotherapy. He also opined that it was premature to discuss any further treatment for the chondral lesion of her medial femoral condyle. Furthermore, he speculated that there was some abnormality at the time of her 2011 arthroscopy, but he did not have anything to



confirm that. Dr. Arnold disagreed with Dr. Pearce's findings in a March 19, 2014 letter.

Instead, he explained that the "full thickness chondral defect of the medial femoral condyle"

was new after her 2013 injury, and he opined that the best option for Bumgarner was

autologous chondrocyte reimplantation.

On May 14, 2014, the ALJ filed its opinion, finding that Bumgarner had met her

burden of proving that she was entitled to additional medical treatment for her compensable

left knee injury in the form of the recommended surgical procedure recommended by Dr.

Arnold. The ALJ explained that Dr. Arnold's opinion was entitled to a greater weight than

Dr. Pearce's opinion because Dr. Arnold had evaluated her on multiple occasions as opposed

to the one time that Dr. Pearce evaluated her. The ALJ quoted the following opinion from

Dr. Arnold's March 19, 2014 letter:

> I respectfully disagree with [Dr. Pearce's] recommendations of need for further therapy and not the need for cartilage restoration procedure. My rationale is this. She is 50 years of age. She had a prior knee scope by myself in 2011 at which point the ACL was intact and she had minimal chondral injury. *She had subsequent injury at work. I ended up scoping her knee and she had ACL tear as well as a full thickness chondral defect of the medial femoral condyle. This was new.* The arthroscopy which I performed, was in August 2013 which was approximately 7 months ago. At the time of my last visit, she had a well preserved joint space, she had a stable knee, she had an intact meniscus and she was ideal body weight. She continues to complain of medial joint line pain. I do not agree with Dr. P[ea]rce that physical therapy will continue to improve as she is now 7 months postop. I think what she has is what she has.

(Emphasis added.)

Subsequently, on August 26, 2014, the Commission affirmed and adopted the ALJ's

opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's

SLIP OPINION

opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In doing so, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id*. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id*. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. Finally, the court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*.

Arkansas Code Annotated § 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011

Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id.* The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id.* Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id.*

On appeal, appellants contend that no substantive proof exists to connect appellee's desired additional medical treatment to her May 1, 2013 work injury. Appellants do not dispute that appellee sustained a compensable injury, but appellants allege that appellee's desire for the recommended surgery is not related to the compensable injury. We disagree.

The Commission, by adopting the ALJ's opinion, specifically found that Bumgarner met her burden of proof that she was entitled to additional medical treatment based in large part on the opinion of Dr. Arnold, which it found to be credible and entitled to the greater weight. The Commission recognized that Bumgarner had experienced pre-existing knee issues and recognized Dr. Pearce's opinion. However, the Commission placed a greater weight on Dr. Arnold's opinion in his March 19, 2014 letter. He stated that the "full thickness chondral defect of the medial femoral condyle" was new after her 2013 injury, and he further opined that the best option for Bumgarner was autologous chondrocyte reimplantation. The weight and interpretation of the medical evidence, on which this decision turned, are matters for the Commission. *LVL, supra.* Therefore, under this court's standard of review, we must affirm the Commission's decision.



Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *T.J. Fowler*, for appellants.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.