

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-730

| | |
|---|---|
| ROSE MARIE JONES<br>APPELLANT<br><br>V.<br><br>TARGET CORPORATION AND<br>SEDGWICK CLAIMS MANAGEMENT<br>APPELLEES | **Opinion Delivered:** March 29, 2017<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G306789]<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the Arkansas Workers' Compensation Commission's (Commission) June 3, 2016 opinion affirming and adopting the November 4, 2015 opinion of the administrative law judge (ALJ) in which the ALJ found that appellant failed to meet her burden of proving that she is entitled to additional medical treatment as recommended by Dr. James Blankenship. Appellant's sole argument on appeal is that the Commission's opinion is not supported by substantial evidence and that she is entitled to additional treatment. We affirm.

On August 17, 2013, appellant, a fifty-nine-year-old woman, had an accident in which she suffered a compensable injury—hitting her head and falling onto her back—while employed with appellee. The parties stipulated that as a result of that accident, appellant had an injury to her head, neck, and low back. Appellant did not seek treatment on the day of her injury and went to work the next day.

Appellant visited Dr. Daniel Burke at the Family Medical Walk-In Clinic (FMW) on August 20, 2013. She complained of "throbbing at [her] frontal lobe and posterior head"; "numbness" at [her] posterior head, which was "worsening"; "dizziness, described as 'lightheadedness'[,]" which was "worsening"; "muffled" hearing; nausea; visual changes, which were "new"; and "left side thoracic and lumbar pain as well as pain in right thigh." She was sent to the emergency room where she was diagnosed with post-concussion syndrome.[1] Though her chief complaint was the fall, the comment section stated that she "fell 3 days ago from standing position, hit back of head, possible loss of consciousness, visual disturbances today, headache, and dizziness." The sole point of impact listed was the head. There was no mention of back pain.

Following her August 20, 2013 emergency room visit, appellant returned to FMW on August 26, 2013, where she was taken off work from August 26, 2013, to August 28, 2013. She returned to FMW on August 28, 2013, stating that "she had pain in her left buttocks and hip the night before last." Appellant was taken off work from August 28, 2013, to September 2, 2013. Appellant returned to FMW on September 2, 2013, complaining of "[s]till having neck and low back pain[,]" with her low back pain rated as "currently 3/10 but can be severe at times" and being "worse at night." She was taken off work again, this time from September 2, 2013, to September 6, 2013. Appellant was then referred to Dr. Michael Morse by Dr. Burke, whom she visited on September 6, 2013.

---

[1]She was also diagnosed with atypical meningioma of the brain, which Dr. Michael Morse later found was unrelated to the accident.

Dr. Morse's impression when she visited with him included a recommendation of physical therapy. In his September 16, 2013 visit with appellant, he stated that she will "benefit from skilled PT to address her pain and dysfunction associated with this fall and resultant pain and discomfort." He prescribed twenty-four physical therapy visits. Appellant's first physical therapy session was on September 18, 2013. Notes show that appellant "responded reasonably well" to the session and that the physical therapist "reported seeing nothing at this time that should prevent pt. from performing essential job functions." Accordingly, appellant was returned to regular work duty.[2]

At her September 20, 2013 physical therapy session, appellant reported having been involved in a motor vehicle accident (MVA) within an hour of completing her September 18, 2013 session. She stated that her "back is even more flared up" and that she thought her "tailbone needs to be xrayd [sic] to see if there is a fracture." Despite increased pain in the "LB/sacrum with pressure during exercises and manual therapy[,]" appellant "responded well" to the session. Appellant reported her lower back being "a little better" on September 23, 2013, and that the "last treatment helped a lot" though she still experienced pain when sitting. She was again assessed as responding "reasonably well" to treatment, though she still had "c/o increased pain in the LB and neck[.]" At her September 25, 2013 session, she reported that her tailbone had been "very painful the last few days" and that her "mid-thoracic started hurting a lot yesterday[.]" She reported being "jolted in the car wreck" and thinking she needed another x-ray. At her September 27, 2013 session, she stated that her

---

[2]The Work Status Report stating that appellant was returned to work duty is not dated.

tailbone hurt and her lower back pain was "6/10." It was noted that her "mobility [was] with decreased pain and difficulty[.]" Appellant was discharged from physical therapy on October 15, 2013, after only six sessions, "because she [had] stopped coming to physical therapy."

Notes from her October 22, 2013 visit with Dr. Morse state that appellant had "good mobility of her lumbar spine" and stated that, despite her worry that she might have a herniated disc, "clinically she [did] not have a disc herniation." Dr. Morse specifically stated he saw no need for any imaging procedures "[a]s long as she continues to improve" and he wanted more physical therapy on her lumbar spine. In his November 19, 2013 notes, Dr. Morse stated that appellant's "pain overall [was] improving[.]" He found that she had reached maximum medical improvement as she was "back to work with no restrictions." Dr. Morse stated that "[n]o additional evaluation or therapy on [his] part [was] necessary."

Appellant received no medical treatment for her back pain between November 19, 2013, and March 16, 2015, the date on which she visited Dr. Blankenship. At that visit, she complained of the following:

> Patient is in today for evaluation of her pain. She complains of low back pain that radiates bilateral hips, right worse then left. States pain goes into both buttock and down posterior-lateral legs to feet, left greater than right. Complains of numbness and tingling in back. Side lying, sitting and prolonged standing aggravates pain. States has decreased strength in both legs. Denies incontinence. Patient has done PT with Youman in 2013. She reports she was injured on 8/17/13 when she was a cashier at Target and fell back. She had immediate pain.

Following his examination, from which he derived diagnoses of lumbago/lumbalgia, lumbar/thoracic/lumbosacral radiculopathy, acquired spondylisthesis, and fibromyalgia myalgia and myositis, Dr. Blankenship's March 16, 2015 visit note stated the following:

First of all, I have told the patient that she has essentially had no conservative treatment to date for her lower back. Four to five visits of physical therapy is insignificant. I have recommended that we get her into a comprehensive aggressive and active physical therapy program with the folks at Trinity. I have had them evaluate her today and we will initiate that once authorized. I have recommended we get her in to see Dr. David Cannon for evaluation and treatment, and I have also recommended putting her on scheduled anti-inflammatory dose of Celebrex, as well as Lyrica at 75 mg twice a day and compound cream. I have recommended that she take the compound cream with her to physical therapy for them to ultrasound it in, and she can utilize it at home. I will plan on seeing her back in eight weeks and we will see how she is progressing at that time.

No mention of appellant's multiple motor vehicle accidents was contained in Dr. Blankenship's notes.

Additionally, appellant had received treatment from her family physician, Kathy Mayhew, since 2006. Throughout her post-injury treatment with Dr. Mayhew, appellant never complained of lower back pain.[3]

A hearing on appellant's claim was held before the ALJ on October 7, 2015. In pertinent part, appellant testified that (1) appellee denied her further treatment after she had completed six sessions of physical therapy; (2) she was released to work though she was "not feeling good[,]" still had problems with dizziness, and had "really bad" lower back pain; and (3) she complained to human resources several times"—she specifically said "30 times in an three month period"—and asked to have her lower back checked but further treatment was "not allowed" by appellee and her requests were "ignored."[4] She admitted being in a MVA

---

[3]Appellant complained of "upper back pain since a motor vehicle accident several months ago" on November 4, 2014.

[4]Though she asserted that appellee did not allow her to continue treatment, she admitted that she had no documentation from them saying that she could not continue treatment.

in September of 2013, but averred that it was "very minor"; the airbag did not deploy. She also stated that she did not report to her physical therapist or Dr. Morse that she "had increased back pain" after her September accident or that the accident "aggravated [her] more." She also admitted being in a MVA in June of 2014 from which she had "permanent neck problems[,]" but she initially denied that it affected her back, only to admit later that she "ended up settling [the] back claim" from that accident. She admitted to two other motor vehicle accidents prior to her August 2013 injury, but denied that she was injured in either.[5]

Appellant denied ever having problems with her lower back before the August 17, 2013 accident and stated that she "never had any problems doing [her] job because of her back" when she first started. However, she went on to state that she "did not testify . . . that [she] never had problems with her lower back before her fall in August of 2013"; admitted that a prior injury obtained when she worked at a sandwich shop "did hurt [her] lower back and [she] got some treatment"; and agreed that she fell in her kitchen, thereby sustaining a lower back injury. She testified that there had "never been a time since the fall that [her] back [had] gotten better." She admitted having had hip pain prior to the fall, but stated that it was for a "short period of time[.]" She stated that the problems in her lower back "have not changed" since the August 17, 2013 injury. She admitted to having received no treatment between when Dr. Morse released her from treatment in November of 2013 to

_____

[5]In one accident, she hit a stop sign "to avoid a bad collision" and in another accident, she was "sideswiped by a semi."

March of 2015 when she went to Dr. Blankenship and stated that she complained of lower back pain to Dr. Mayhew. To date, she was still working without restrictions.

Megan Templeton, an executive with appellee Target's human resource department whose job was to work with appellant through her claim, testified in pertinent part that she processed appellant's claim and that appellant "did not mention her back or leg pain" when she initially interviewed appellant. Furthermore, after she was released to full-duty, despite initial concerns of dizziness and headaches that she was still getting,[6] appellant "did not complain to [Templeton] about a back or leg problem," "did not describe any issues about being able to perform her duties," and Templeton "didn't observe [appellant] having any difficulties performing her job with regard to her back or legs." She denied that appellant came to her requesting treatment for her leg or her back.

In his September 29, 2015 deposition, Dr. Morse confirmed that appellant reported a "flare up" in her back pain after the September 2013 MVA. Furthermore, he stated that appellant's decision to stop physical therapy "would not have been based on anything [he] recommended." His initial examinations of her muscles, spine, and extremities found "nothing objective" to determine that appellant had a back injury "at that point." At that time, "neck and back pain" were "subjective complaints." Dr. Morse stated further that appellant "had normal range of motion for cervical and lumbar[,]" and that there was "no range of motion limitation when [he] last saw her in November 2013." If he had believed

---

[6]Templeton remembered "approximately two [complaints from appellant] within a week of her being released to full duty" but none after that.

additional testing, referrals, or an additional specialist was necessary, he would have ordered it.

The ALJ's November 4, 2015 opinion found that appellant had failed to meet her burden of proving that she is entitled to additional medical treatment as recommended by Dr. Blankenship. Appellant filed a timely appeal of the ALJ's opinion to the Commission. In the Commission's June 3, 2016 opinion, the majority affirmed and adopted the ALJ's opinion. This timely appeal followed.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.[7] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[8] The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission.[9] Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission.[10] The probative value of any medical evidence is for the Commission to decide.[11] The Commission is not required to believe the

---

[7]*Emergency Ambulance Serv., Inc. v. Burnett*, 2015 Ark. App. 288, at 10, 462 S.W.3d 369, 375 (citing *Target Corp. v. Bumgarner*, 2015 Ark. App. 112, 455 S.W.3d 378).

[8]*Id.*

[9]*Id.*

[10]*Id.*, 2015 Ark. App. 288, at 10–11, 462 S.W.3d at 375.

[11]*Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, at 2, 460 S.W.3d 814, 816 (citing *Hill v. Treadaway*, 2014 Ark. App. 185, 433 S.W.3d 285).

testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief.[12] When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts.[13]

The court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission.[14] When the Commission denies benefits because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief.[15] Typically, this court reviews only the decision of the Commission, not that of the ALJ; however, when the Commission affirms and adopts the ALJ's opinion as its own, as it did here, we consider both the ALJ's decision and the Commission's opinion.[16]

Arkansas Code Annotated section 11-9-508 requires an employer to promptly provide for an injured employee such medical treatment "as may be reasonably necessary in

---

[12]*Id.*, 2015 Ark. App. 265, at 2–3, 460 S.W.3d at 816.

[13]*Burnett*, 2015 Ark. App. 288, at 11, 462 S.W.3d at 375.

[14]*Id.*

[15]*Cossey*, 2015 Ark. App. 265, at 3, 460 S.W.3d at 816–17 (citing *Howell v. Scroll Techs.*, 343 Ark. 297, 35 S.W.3d 800 (2001)).

[16]*J.B. Hunt Transp. Servs. Inc. v. Hollingsworth*, 2016 Ark. App. 279, at 5, 497 S.W.3d 197, 200 (citing *Ozark Nat. Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110).

connection with the injury received by the employee."[17] What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact.[18] The claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury.[19] A claimant bears the burden to establish by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury; it is a question of fact.[20]

On appeal, appellant's sole argument is that the Commission's opinion was not supported by substantial evidence and that she is entitled to additional medical treatment. In support of this argument, appellant asserts that her injury remained unchanged, therefore requiring additional medical treatment. Such an assertion is contrary to the medical records and deposition testimony of Dr. Morse. Furthermore, Dr. Blankenship's medical opinion appears to have no notice of appellant's multiple accidents, and her increased pain therefrom. Additionally, despite her assertion that appellee ceased paying for her physical therapy and would not "allow" it, it is clear that appellant ceased going to physical therapy on her own

---

[17]*Univ. of Ark. Pub. Employee Claims Div. v. Tocci*, 2015 Ark. App. 505, at 2, 471 S.W.3d 218, 219 (citing Ark. Code Ann. § 11-9-508(a) (Repl. 2012)).

[18]*Id.*, 2015 Ark. App. 505, at 3, 471 S.W.3d at 220 (citing *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005)).

[19]*Id.* (citing *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004)).

[20]*Cossey*, 2015 Ark. App. 265, at 3, 460 S.W.3d at 817 (citing *Cole v. Commerce & Indus. Ins. Co.*, 2009 Ark. App. 617).

accord for neither Dr. Morse nor appellee told her to cease physical therapy. Finally, appellant has continued to work without restriction since before and after being released from Dr. Morse's medical care. Resolving the conflicting medical evidence, making credibility determinations, and deciding what weight to give to particular pieces of evidence is within the Commission's province.[21]  We cannot find error on the part of the Commission; therefore, we hold that substantial evidence supports the Commission's opinion. We affirm.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for appellees.

---

[21] *Shiloh Nursing & Rehab, LLC v. Lawson*, 2014 Ark. App. 433, at 3–4, 439 S.W.3d 696, 698–99 (citing *Adams v. Bemis Co.*, 2010 Ark. App. 859).