BART F. VIRDEN, Judge
This is an appeal from the September 27, 2017 decision of the Arkansas Workers' Compensation Commission ("Commission") affirming the determination of the administrative law judge ("ALJ") that Michael Lawson Bess sustained a compensable injury. The employer and insurance carrier appellants contend that no substantial evidence exists to support the Commission's decision. We affirm.
I. Facts
When Bess sustained his injury on December 25, 2016, he was sixty-six years old and had been employed with the Kroger pharmacy for about three years. Bess worked as a staff pharmacist, and on the day of the injury his employer required him to go to work to check on the pharmacy after the security alarm sounded. Bess left his home in Conway and drove to the pharmacy, which is located in Russellville. The pharmacy is a free-standing building located in the Kroger grocery store parking lot. Bess parked in the space directly in front of the pharmacy, sat in his car for a few minutes, and he observed that there was no sign of forced entry and that he could not hear an alarm sounding. Bess exited the vehicle and fell while climbing the curb, breaking his left leg. Bess was taken by ambulance to the hospital, and he was hospitalized for twenty-one days. An orthopedic surgeon placed four screws and a rod in his leg, and after his hospitalization Bess completed an eleven-day inpatient rehabilitation program. Following the incident, appellants denied Bess's request for workers'-compensation benefits because they did not consider Bess to have been performing employment services when he was injured. Bess initiated a claim for benefits with the Commission.
On August 15, 2017, a hearing was held before the ALJ to determine the compensability of Bess's claim arising out of the December 25, 2016 job injury. At the hearing, Bess testified in pertinent part that part of his job as a staff pharmacist is *420 ensuring that the premises are secure and "making sure there is no pilfering or stealing[.]" Bess testified that on Christmas day in 2016, he received a voicemail message from the Kroger Central Alarm Control ("KCAC") informing him that the alarm had sounded at the pharmacy. Bess advised KCAC to send the police and to ask the police if any doors or windows had been broken. KCAC explained that the police would not divulge that information, which Bess thought was unusual. A little later, Bess received a call from Scott Carpenter, an asset-protection manager for Kroger, who told him to go check on the store, and Bess drove to Russellville to do so. Bess testified that "I felt that I needed to comply with Mr. Carpenter's request because that is my job. I am supposed to take care of the pharmacy and assumed whenever security or loss prevention called that we are required to take care of that. I thought he had apparent authority to tell me what to do." Bess testified that he had been required to check on the pharmacy when an alarm sounded once before the incident on Christmas day. On the day Bess injured his left leg, he arrived in the parking lot and did not hear the alarm sounding, nor did he observe any signs of forced entry. He sat in his car finishing a cigarette and then got out of his car and approached the front door to unlock it. Bess stated that he stepped up on the six-inch curb with his right foot and then fell and broke his left leg. The security video of Bess's fall was admitted and showed Bess stepping up onto the curb with his right foot and immediately falling down. Bess admitted that in the past he had issues with his right knee, he had used a cane, and that sometimes his right knee felt weak and as though it was going to "go out on me." Bess stated that he had not had any treatment for his right knee, and it had been ten years since he had talked to a doctor about his knee. Bess also stated that his knee did not give out on him that day, that he had not had any trouble before the fall, and that three entrances to his home involved climbing and descending stairs.
Scott Carpenter described the protocol regarding the sounding of the security alarm. Carpenter explained that when the alarm sounds, someone from the KCAC calls the employees on the call list
to make contact with someone to go to that location if they feel it is necessary for someone to go. The judgment of whether someone should go is up to the call center people. They decide if there's someone that needs to be called to be notified or if they feel that someone may or may not need to go to the store.
Carpenter testified that on December 25, 2016, KCAC contacted him and told him that someone needed to go check on the store and that police had arrived at the scene. Carpenter asked if there had been a break-in, but KCAC was unable to give him that information. Carpenter testified that though he was not Bess's supervisor and had no authority over him, he asked Bess to check on the store, and Bess agreed to go.
Steve Depner, the Kroger pharmacy manager since 2008, described Bess as a "co-manager" or "staff pharmacist." Depner explained that the Russellville location is a "unique situation" because the pharmacy is free-standing and not contained within the grocery store.
In the September 27, 2017 opinion, the ALJ found that Bess's injury was a nonidiopathic compensable injury arising out of the course and scope of his employment. Specifically, the ALJ found that regarding whether Bess was performing employment services at the time of the injury, "it is clear that on a normal day, the claimant would not be actually at work until he got *421 in the store, the situation was different on Christmas Day. The store was closed, and a burglar alarm went off." The ALJ relied on Carpenter's testimony that KCAC "decides if ... they feel if someone may need to go, that they call the shots, and that they needed someone to go." The ALJ found that, based on KCAC's decision, Carpenter and Bess agreed that Bess would go to the store. The ALJ determined that Bess had driven to the store to check the alarm on a previous occasion, and that he felt his job description included preventing and reporting robbery. In light of these facts, the ALJ found that Bess was performing employment services when he traveled from Conway to Russellville to check on the pharmacy. The ALJ also found it "important that the claimant had previously made the same trip because he felt that it was part of his job and he was never instructed to not check on the store if he got a call in regard to the alarm."
The ALJ also determined that Bess's injury was nonidiopathic, and therefore compensable. Specifically, the ALJ found that though Bess had previously had issues with his right knee, the claimant credibly testified that he did not suffer problems going up and down stairs on Christmas Day. The ALJ noted that when Bess broke his left leg and was admitted to St. Mary's Hospital in Russellville, his medical records contained no mention of any problems, complaints, or treatment of Bess's right leg or knee.
Appellants appealed the ALJ's determination, and the full Commission affirmed and adopted the ALJ's decision. This timely appeal followed.
In reviewing a decision from the Commission, our court reviews the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. Nichols v. Micro Plastics, Inc. , 2015 Ark. App. 134, 2015 WL 826691. Substantial evidence exists if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. Id. The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. Texarkana Sch. Dist. v. Conner , 373 Ark. 372, 284 S.W.3d 57 (2008). It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. Martin Charcoal, Inc. v. Britt , 102 Ark. App. 252, 284 S.W.3d 91 (2008).
We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. Cedar Chem. Co. v. Knight , 99 Ark. App. 162, 258 S.W.3d 394 (2007), aff'd , 372 Ark. 233, 273 S.W.3d 473 (2008). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. Neal v. Sparks Reg'l Med. Ctr. , 104 Ark. App. 97, 289 S.W.3d 163 (2008). The Commission is not required to believe the testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. Id. The Commission is the ultimate arbiter of weight and credibility. Towler v. Tyson Poultry, Inc. , 2012 Ark. App. 546, at 2, 423 S.W.3d 664, 666.
The sole issue on appeal is whether substantial evidence supports the Commission's *422 finding that appellee proved that he sustained a compensable injury. Appellants argue that the Commission erred in finding that Bess was performing employment services when he sustained the injury to his left leg and that the injury was nonidiopathic in nature and therefore compensable. We disagree.
Arkansas Code Annotated section 11-9-102(4)(A)(I) defines compensable injury as
[a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.
Our court has held that an employee is performing employment services when he or she is doing something that is generally required by his or her employer. Hill v. Treadaway , 2014 Ark. App. 185, 433 S.W.3d 285. We use the same test to determine whether an employee was performing employment services as we do when determining whether an employee was acting within the course of employment. Id. The test for determining whether an employee was injured while performing employment services is the same as the test for determining whether an injury occurred out of and in the course of employment: whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. Herrera-Larios v. El Chico 71 , 2017 Ark. App. 650, at 6, 535 S.W.3d 305, 310. The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. Id. Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. Centers for Youth & Families v. Wood , 2015 Ark. App. 380, at 4, 466 S.W.3d 422, 425.
The ALJ's decision-adopted by the full Commission-that Bess was performing employment services when he was injured relies on substantial evidence. The ALJ found that Bess's "trip to check on the store [was] an inherent and necessary incidental to a required employment activity in order to satisfy his job description." The ALJ noted that Bess had previously driven to the store to check the alarm because he believed it was his job to do so. Also, the ALJ heard testimony that Bess and the pharmacy manager agreed that KCAC "called the shots" and that he must go to the pharmacy to check the alarm. Furthermore, there was testimony that the police refused to disclose whether the building had been physically breached, which related directly to Bess's job description that he was responsible for ensuring the premises are secure and for preventing loss. There is no error in the Commission's finding that Bess was performing employment services as he approached the pharmacy to check on the building and the situation involving the alarm, and there is sufficient evidence to support the finding that Bess was performing employment services when he was injured.
We now turn to appellants' contention that the Commission's decision that Bess's injury is non-idiopathic is erroneous. An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. Cedar Chem. Co. , 99 Ark. App. at 165, 258 S.W.3d at 396. Injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. Id. When a claimant suffers an unexplained injury at work, it is generally *423 compensable. Id. Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk of injury or aggravate the injury. Id.
Appellants argue that the Commission's finding that Bess's injury resulted from a specific incident was arbitrary, and there was clear evidence in the record to the contrary. We disagree. Appellants' arguments that (1) Bess did not present a convincing story regarding the cause of the fall, (2) that a weakened right knee from a high school basketball injury must have caused the fall, and (3) that the video of Bess falling is clear proof that a weakened right knee caused the fall are essentially a request for this court to determine the credibility of the witnesses and to reweigh the evidence. As we stated above, it is the Commission's duty to make credibility determinations and to weigh the evidence See Martin Charcoal, Inc., supra .
The Commission found credible Bess's testimony that he had no problem climbing stairs before this accident. Furthermore, the Commission opined that Bess's left-leg injury was nonidiopathic primarily because there was no evidence in Bess's medical records of this type of injury, any related symptoms, or related treatment prior to his accident at work. Viewing the evidence in the light most favorable to the Commission, we hold that substantial evidence supports the Commission's decision that Bess's injury arose out of employment and that it was non-idiopathic in nature. We hold that reasonable minds could reach the result found by the Commission.
Affirmed.
Gruber, C.J., and Whiteaker, J., agree.