Cite as 2019 Ark. App. 557

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-19-487

| | |
|---|---|
| UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES AND PUBLIC EMPLOYEE CLAIMS DIVISION<br><br>APPELLANTS<br><br>V.<br><br>PATRICIA HINES<br><br>APPELLEE | **Opinion Delivered:** December 4, 2019<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G802238]<br><br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Appellants University of Arkansas for Medical Sciences (UAMS) and the Public Employee Claims Division appeal a decision of the Arkansas Workers' Compensation Commission awarding appellee Patricia Hines benefits for an injury to her left knee. For reversal, appellants contend that the Commission erred in finding that Hines was performing employment services at the time she was injured. We affirm.

On March 28, 2018, Hines slipped and fell at work resulting in a left-patella fracture, which required surgical repair.[1] Following her injury, Hines filed a claim for workers'-compensation benefits. Appellants controverted the claim in its entirety, alleging that Hines was not performing employment services at the time of the accident. A hearing before an

---

[1]About two weeks prior to the accident, Hines had submitted notice that she was resigning as of March 30, 2018, because she was moving to Florida. Hines worked at UAMS for about ten years.

administrative law judge (ALJ) took place on October 24, 2018. Hines was the only witness to testify.

Hines testified that she worked for UAMS as a surgical–services patient–unit coordinator. She worked from the front desk of the unit and was responsible for scheduling, coordinating, and staffing the department's thirty-two surgical rooms.  Her normal shift was from 2:00 p.m. to 10:30 p.m. She was required to clock in at the beginning of her shift and clock out when it was over. Hines stated she had had two fifteen-minute breaks and a thirty-minute lunch break.[2] Her breaks were not scheduled. She explained, "Because of the nature of my position at the front desk, there is no scheduled time because there's cases and there's emergencies and there's traumas, so I have to fit in a break where I can, if I can." She usually combined her break with her lunch to take just one break.

On the day of her accident, Hines took her break at approximately 6:30 p.m. She left her second-floor work area and rode the elevator down to the first floor. When she exited the elevator, she answered a phone call from her granddaughter. She had taken approximately ten to fifteen steps when she slipped and fell. Hines testified that when she was taking her break she was not headed to any specific place. She often took her break in the lobby because it was sunny, and she enjoyed the piano. Hines said that she generally used her break to get away from her department and to take care of things she couldn't handle while she was at work, such as calling family members.  She explained that she

---

[2]On cross-examination, Hines said that she only had forty-five-minute breaks during the six years she worked in that department.

worked in a "very stressful department" and that breaks were necessary to refresh and return with more energy and better performance.

Hines testified that she did not clock out during her breaks and was still on duty. She explained there are emergencies and traumas at any time and that she is the only unit coordinator on that shift. If there was an emergency, the head nurse would call her to return immediately, which was why Hines stayed in the building and did not clock out. If she were to leave the building, UAMS policy required her to clock out so they knew she was not in the building. When asked if she was required to take her breaks on the premises or if she could leave, Hines answered, "No, I could not leave." The nurse manager covered her desk when Hines was on break. On the day of the accident, Hines did not get a call to return, but she had been called back three to four times during her six years in that position.

The ALJ found that Hines failed to prove by a preponderance of the evidence that she was performing employment services at the time of her fall. The Commission, in a split decision, reversed the decision of the ALJ. The Commission wrote:

> In the case at bar, the claimant was within the time and space boundaries of her employment, she was paid for her time and, even though she was not at her designated work station, she was on the jobsite when she sustained her injury. Additionally, as in *Ray*, *supra*, the claimant was required to leave her break and return to work if she was needed to assist with an emergency or if a trauma occurred.

> The present case is analogous to *Ray*, *supra* [*Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999)], and *Kimbell*, *supra* [*Kimbell v. Assoc. of Rehab Industries*, 366 Ark. 297, 235 S.W.3d 499 (2006)]. The claimant testified that she was taking a break but was still on duty because she remained in the building. Additionally, the claimant remained on call at her jobsite, clocked in and available for work. It appears that one of the essential functions of the claimant's position was to be on site, waiting for a trauma to occur so that she could coordinate any necessary surgical procedures. The claimant testified that she was the only unit coordinator on her shift and if she had been called to return to her desk because of an emergency or trauma, she would have been required to do so. The claimant testified further that

she had been called back from her lunch break in the past. Clearly, the respondent-employer derived a benefit from the claimant remaining in the building, immediately available to resume her duties. For the aforementioned reasons, we find that the claimant was performing employment services.

Appellants filed a timely notice of appeal.

In reviewing a decision from the Commission, our court reviews the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. *Kroger Ltd. P'ship v. Bess*, 2018 Ark. App. 404, at 6, 555 S.W.3d 417, 421. Substantial evidence exists if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. *Id.*

A compensable injury includes an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services or results in disability or death. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an injury that was inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). The supreme court has interpreted the term "employment services" as performance of something that is generally required by an employer. *Cook v. ABF Freight Sys., Inc.*, 88 Ark. App. 86, 89, 194 S.W.3d 794, 796 (2004). We use the same test to determine whether an employee was performing "employment

4

services" as we do when determining whether an employee was acting within "the course of employment." *Id.* The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.*

Appellants contend that Hines was not performing employment services at the time of her accident, but rather performing a personal errand, and that cases analogous to this one require a finding that her injury is not compensable. *See Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998) (affirming the Commission's decision that appellant was not performing employment services when she tripped on a rolled-up carpet as she exited an elevator on her way to the smoking area and argued that her break advanced her employer's interest by allowing her to relax and helped her work more efficiently the rest of her shift); *McKinney v. Trane Co.*, 84 Ark. App. 424, 143 S.W.3d 581 (2004) (affirming the Commission's decision that appellant was not performing employment services when he was injured on break even though he felt an obligation to report or take care of anything he might observe during his break and that he returned from break more refreshed and better able to complete his work); *Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004) (affirming the Commission's decision that although the removal of waste by appellant may have advanced the employer's interests, at least indirectly, the removal of it for the employee's personal use was not inherently necessary to his job); *Fulbright v. St. Bernard's Med. Ctr.*, 2016 Ark. App. 417, 502 S.W.3d 540 (affirming the Commission's decision that the employee, who worked mostly in the laundry room, was not performing employment services when she was injured in the cafeteria when getting something to eat,

5

which was considered a personal errand); *Ganus v. St. Bernard's Hosp., LLC*, 2015 Ark. App. 163, 457 S.W.3d 683.

Of all the cases cited in support of reversal, appellants contend that *Ganus*, is most similar factually to the present case. 2015 Ark. App. 163, 457 S.W.3d 683. There, Ganus was a nurse in the cath lab. She argued that although she had a nurse covering her patient when she was on her lunch hour, she was subject to being called back to the unit if there was a problem. In affirming the Commission's decision finding that she was not performing employment services when she fell in the cafeteria during her lunch break, we stated that even though there may be evidence that could support a finding different than the Commission's, such is not a proper basis for reversal. *Id.* at 9, 457 S.W.3d at 688. This court noted that the evidence relied on by the Commission was that Ganus was on a personal errand to retrieve food for her own benefit; the employee handbook provided that an employee should be considered to be "completely relieved" of her work responsibilities while on break, and Ganus left her patient in the hands of another employee before she went to retrieve her lunch. *Id.*

Appellants also argue that the cases relied on by the Commission in finding that Hines was performing employment services— *Kimbell*, 366 Ark. 297, 235 S.W.3d 499 (2006) and *Ray*, 66 Ark. App. 177, 990 S.W.2d 558 (1999)—are distinguishable. In *Ray*, the claimant was a food-service worker who was injured when she slipped as she was getting a snack to eat during her paid break. The university provided free meals to the cafeteria workers as inducement for the employee to remain on the premises and required workers to be available to assist students. 66 Ark. App. 177, 990 S.W.2d 558. In reversing the

Commission's decision that the claimant was not performing employment services, we stated that "it is clear that when an employer requires an employee to be available for work duties, the employee is performing employment services." *Id*. at 182, 990 S.W.2d at 562. We held that the claimant was performing employment services despite the fact that her fall occurred when she was going to get a snack during a paid break rather than going to serve a student. *Id*.

In *Kimbell*, the claimant was a rehabilitation specialist who helped individuals with disabilities find employment. When he was outside on a smoke break, he was approached by a client asking questions. During this encounter, the claimant began backing up out of fear and fell off a porch, which resulted in injury. In reversing the Commission's decision, our supreme court held that while on break talking to the client, the claimant was advancing the employer's interest. *Kimbell*, 366 Ark. at 303, 235 S.W.3d at 504.

While we agree that *Ganus*, *supra*, is most similar factually of all the cases cited by appellants in support of their argument, it is distinguishable. Although Ganus argued that she was subject to being called back to the unit if there was a problem, the employee handbook indicated that an employee was considered completely relieved of his or her duties while on break. *Ganus*, 2015 Ark. App. 163, at 9, 457 S.W.3d at 688. Also, Ganus had another employee monitoring her patient. Here, Hines's testimony was that she was subject to being called back to her unit. In addition, although Hines had the nurse manager covering her station, Hines was the only one in her position during her shift.

We agree with the Commission that this case is more analogous to *Ray*, *supra*. Here, Hines testified that during her break she remained on duty and in the building; she was

clocked in; and she remained on call and available to work. She testified that she was the only unit coordinator on her shift and that if she had been called to return to her desk because of an emergency or a trauma, she would have been required to do so. She stated that she had been called back three or four times in the past. Based on this testimony, the Commission concluded that Hines was performing employment services because UAMS derived a benefit from Hines's "remaining in the building, immediately available to resume her duties." As in *Ray*, *supra*, the fact that Hines was on a personal call at the time of her injury is of no consequence because evidence indicated the employer required her to resume her duties when called. Because the Commission's decision is supported by substantial evidence, we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Robert H. Montgomery*, for appellants.

*Moore, Giles & Matteson, L.L.P.*, by: *Greg Giles*, for appellee.